390 A.2d 358.

EDWARD RAYMOND *et al.* v. JAY ARTHUR JENARD *et al.*

AUGUST 8, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J. The sole question raised by the plaintiffs' appeal is whether the trial court erred in instructing the jury that the case was controlled by the contributory negligence rule rather than by the comparative negligence rule.

A brief recital of the facts should be helpful in providing a context within which to consider the legal issue. On June 3, 1971, plaintiff, Stephen Raymond, a minor, was injured when a firecracker given him by defendant, Jay Arthur Jenard, exploded in his hand. On his own as well as Stephen's behalf, his father commenced this civil action for actual and consequential damages against Jay and his parents in the Superior Court on November 16, 1973.

In the interim, however, on July 16, 1971, the Legislature enacted P.L. 1971, ch. 206, §1, which provides:

> "In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or person having control over the property may not have been in the exercise of due care

shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property." General Laws 1956 (1969 Reenactment) §2-20-4 (amended 1972).

In submitting the case to the jury, the trial justice rejected plaintiffs' request that he charge consonant with the newly enacted comparative negligence statute. Instead, he directed the jury to return special findings on whether defendants were negligent and Stephen contributorily negligent; and in accordance with the contributory negligence rule he further instructed that, irrepective of defendants' negligence, a finding that Stephen was contributorily negligent would preclude a verdict for either plaintiff. The jury found specially that defendant Jay was negligent, and that plaintiff Stephen was contributorily negligent. Accordingly, pursuant to the instructions received, it returned verdicts for defendants.

The plaintiffs, while recognizing that retrospectve operation of a statute is not favored by the courts, nonetheless argue that the opening phrase of the comparative negligence statute, "[i]n all actions hereafter brought," unambiguously manifests a legislative intention that §9-20-4 operate retroactively, that is, to an action which may have accrued prior to its effective date, but was sued on subsequent thereto. They contend, in substance, that the Legislature, had it intended otherwise, would have made the statute applicable to action "hereafter accruing" rather than to those "hereafter brought."

A reference to the legislative history of §9-20-4 reinforces plaintiffs' argument. As originally introduced in the Senate on January 19, 1971, the Act made the comparative negligence rule applicable "[i]n any action accruing on and after July 1, 1971, in which the cause of action has arisen on and after said July 1, 1971 * * *." The explanation accompanying its introduction stated that "[t]his bill provides that in any negligence action which accrues after July 1, 1971, contri-

butory negligence of the claimant shall not bar recovery * * *." Had that language been preserved, we would have little doubt that the Legislature intended prospective application. However, in the bill reported out by the committee and subsequently enacted into law, the language indicating prospectivity was deleted, and the language manifesting retroactivity was substituted.

That clear enunciation of a legislative choice overrides any constructional preference for prospective or retrospective application that might otherwise obtain. *Cipriano* v. *Personnel Appeal Board,* 114 R.I. 141, 143, 330 A.2d 71, 72 (1975); *Hardman* v. *Personnel Appeal Board,* 100 R.I. 145, 150, 211 A.2d 660, 663 (1965); *Houle* v. *Lussier,* 50 R.I. 339, 341, 147 A. 756, 757 (1929). Nonetheless, there still remains the problem of whether retrospectivity renders the Act repugnant to the due process clause of the fourteenth amendment to the Federal Constitution.

Of course something more than mere retrospectivity is required to invalidate a statute. *Prata Undertaking Co.* v. *State Board of Embalming & Funeral Directing,* 55 R.I. 454, 470, 182 A. 808, 815 (1936). The defendants here purport to find that "something more" primarily in the rule of contributory negligence that was in effect in this state when §9-20-4 was enacted. That rule required a plaintiff to establish his own freedom from contributory negligence as an essential element of his cause of action, *Silvia* v. *Caizzi,* 63 R.I. 172, 178, 7 A.2d 704, 707 (1939); *Savage* v. *Rhode Island Co.,* 28 R.I. 391, 398, 67 A. 633, 636 (1907), whereas the rule prevailing in a majority of jurisdictions assigned that burden to a defendant. Prosser, *Torts* §65 at 416 (4th ed. 1971).

Initially defendants argue that the differing allocations of the burden of establishing contributory negligence distinguish those cases[1] upon which plaintiffs rely and which

---

[1]*Peterson* v. *City of Minneapolis,* 285 Minn. 282, 173 N.W. 2d 353 (1969); *Godfrey* v. *State,* 84 Wash. 2d 959, 530 P.2d 630 (1975).

sustain the constitutionality of legislation retroactively abolishing the defense of contributory negligence in favor of the principle of comparative negligence. It seems to us, however, that in the present context that distinction is one of form, rather than substance, and cannot prevail.

More telling is defendants' contention that, by eliminating a plaintiff's contributory negligence as an absolute bar to recovery, our comparative negligence statute creates a new cause of action in favor of a contributory negligent plaintiff, thereby depriving a tortfeasor of a "vested right" in contravention of his due process rights under the Federal Constitution.

In arguing that retroactive application of §9-20-4 potentially deprives them of a "rested right," defendants resort to a term traditionally used by courts in discussing the constitutionality of retrospective operation of statutes. *See, e.g., Hardman* v. *Personnel Appeal Board,* 100 R.I. at 150, 211 A.2d at 663. Commentators, however, have categorized the term as merely "conclusory," Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 696 (1960) (hereinafter Hochman), and a leading textwriter has said that the term is "hackneyed" and "does nothing more than focus attention on the question as to what circumstances qualify a right to be characterized as 'vested.' " 2 Sands, *Statutory Construction,* §41.05 at 260 (4th ed. 1973). *See also* Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking,* 48 Cal. L. Rev. 216, (1960).

To determine whether defendants' right in this case may appropriately be so characterized, we are guided by what the Supreme Court has said.[2] Hochman tells us that

> "from an analysis of the cases it becomes apparent that it is impossible to reduce the potentially infinite variety

---

[2] The due process clause of our state constitution, art. 1, §10, applies only in criminal and not in civil cases. *Twomey* v. *Carlton House of Providence, Inc.,* 113 R.I. 264, 271, 320 A.2d 98, 101 (1974).

of situations in which the problem of retroactivity can arise to a single common denominator. However, it is just as clear that the factor most often appearing in these cases is the extent to which the parties have laid reasonable reliance on the law existing at the time of the conduct whose legal consequences the retroactive statute would alter. The importance of this element is apparent when one considers that in very general terms the two major factors to be weighed in determining the validity of a retroactive statute are the strength of the public interest it serves and the unfairness created by its retroactive operation, and the reliance of the parties on preexisting law is perhaps the most accurate gauge of the latter." Hochman at 727; *accord* Slawson, generally.

In assessing the possible unfairness of applying §9-20-4 retroactively, we recognize that some tort victims whose actions would have been barred under the old rule will be able to recover under the new. But §9-20-4 does not nullify the offsetting effect of a plaintiff's contributory negligence; it merely alters the manner in which the negligence of the parties is taken into account.

Whether or not retroactive application will result in unfairness, however, depends not on whether recovery heretofore impossible will now be possible, but whether "settled expectations honestly arrived at with respect to substantial interests" are being defeated, Sands §41.05 at 261, or whether, under the Hochman test, *supra*, the party asserting the "vested right" relied on the preexisting law.

Here, the conclusion seem inescapable that defendants did not act in substantial reliance upon the contributory negligence rule when they committed their allegedly tortious act. Neither did they exercise a lesser or greater degree of care based upon a reasonable expectation that their liability would be excused by plaintiff's failure to establish their own freedom from contributory negligence. Rather, as Dean Prosser points out:

"[i]n the usual case, the negligence on both sides will consist of mere inadvertence or inattention, or an error in judgment, and it is quite unlikely that forethought of any legal libility will in fact be in the mind of either party." Prosser, *Torts* §67 at 443 (4th ed. 1971).

Nonetheless, it is difficult to ignore defendants' argument that their newly created potential for liability under the comparative negligence rule results in at least minimal unfairness. Against this minimal unfairness, we must balance the strong public interest in abolishing the widely preceived harshness associated with the all-or-nothing effect of the traditional contributory negligence rule. Dean Prosser calls it "outrageousness," Prosser, *Comparative Negligence*, 51 Mich. L. Rev. 465, 469 (1953), and Professor James labels it "draconian," James, *Contributory Negligence* 62 Yale L. J. 691, 704 (1953). This dissatisfaction with the unjustness of the contributory negligence rule was undoubtedly what provoked courts or legislatures in many jurisdictions to adopt some form of comparative negligence; we may surmise that it contributed to the enactment of §9-20-4 in this state. On balance, it seems to us that §9-29-4 serves a public interest that far outweighs the minimal harshness caused by its retroactive application to the defendants. In our judgment, their right to the continuance of the preexisting rule is not of such stature that its abrogation by retrospective legislation is inequitable. *See Peterson* v. *City of Minneapolis*, 285 Minn. 282, 173 N.W. 2d 353 (1969); *Godfrey* v. *State*, 84 Wash. 2d 959, 530 P.2d 630 (1975). The trial justice's refusal to instruct the jury on §9-20-4 was therefore error.

The plaintiffs' appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for a new trial.

*Gunning, LaFazia & Gnys, Inc., Guy J. Wells*, for plaintiffs.

*Hanson, Curran & Parks, A. Lauriston Parks*, for defendants.