Grant DULGARIAN et al.

v.

CITY OF PROVIDENCE et al.

No. 85–285–Appeal.

Supreme Court of Rhode Island.

April 11, 1986.

Keven A. McKenna, Robert Suglia, Providence, for plaintiffs.

Anthony F. Muri, Susan Huntley, Licht & Semonoff, Martin Aisenberg, Jones & Aisenberg, Providence, for defendants.

## OPINION

MURRAY, Justice.

This appeal arises out of a class-action suit for declaratory and injunctive relief instituted by the above-named plaintiffs against the city of Providence (city) and the Miriam Hospital (hospital or Miriam), defendants. The issues raised by the plaintiffs before us evolved from the following undisputed facts.

The focus of contention in this matter is a parcel of land, owned by the city, upon which the Summit Avenue School (school) is situated. The school is located in the city of Providence at 86 Fourth Street, adjacent to the Miriam Hospital. According to the record, the hospital has for many years cast covetous eyes towards the Summit Avenue property because it would assist Miriam in its planned growth. In accordance with this proprietary desire, on May 17, 1976, the hospital communicated to the city an inquiry concerning the acquisition of the property. Despite this solicitous overture by the hospital, the school

continued to function as a classroom facility until June 1977, when its academic operations were terminated by the Providence School Department. Thereafter, the school was used to house a portion of the school department's administrative staff. In 1980 the school became vacant.

On December 18, 1980, the Providence School Committee passed a resolution authorizing the use of the school for a noneducational purpose, including the sale of the property to a private party. Subsequently, the city commenced proceedings to sell the school and its accompanying land, which culminated on January 18, 1982 with the Providence Committee on City Property approving the sale of the property to the hospital. The record discloses that the hospital had submitted the highest bid ($140,-000) of all the competing potential purchasers. Enclosed along with the hospital's bid was a certified check in the amount of $14,000 made payable to the City Collector for the City of Providence.

On January 21, 1982, the Providence City Council passed Resolution 21, which authorized the mayor to execute a deed of conveyance of the school to the hospital. Afterwards, on January 27, 1982, the city collector endorsed and deposited the hospital's $14,000 check. The next day, Resolution 21 was approved by the mayor.

On February 24, 1982, Grant D. Dulgarian, a named plaintiff in the action pending before this court, filed a class-action suit in Superior Court against the city of Providence in an effort to enjoin the defendant municipality from selling the Summit Avenue property to the hospital. Before this prayer of injunctive relief could be heard, however, the city successfully moved to dismiss the suit on April 7, 1982.

On March 4, 1982, the city council approved a revised resolution, No. 106, which again authorized the sale of the school to the hospital. This restructured resolution is identical to the previous resolution, No. 21, except that the former contains a specific statement that the school had become "unsuitable and [had] ceased to be used for any public or municipal purpose." This additional language had been incorporated into Resolution 106 pursuant to G.L. 1956 (1980 Reenactment) § 45–2–5 at the suggestion of the hospital's title insurance company. In light of the passage and approval of Resolution 106, the city council rescinded the prior resolution, No. 21.

On April 5, 1982, the committee on city property was advised that under § 2–255 of the Ordinances of the City of Providence, Resolution 106 should have been submitted to the Providence City Plan Commission for report and recommendation before final passage. The same day, Grant D. Dulgarian and Elizabeth D. Dogan, the latter of whom is also a named plaintiff in the case before us, filed a second suit against the city in order to enjoin the sale of the school to the hospital.[1] Once again, however, this claim for injunctive relief was dismissed on or about May 31, 1983 without prejudice in accordance with a stipulation entered into by the parties.

Following the approval of the school's sale by the city plan commission and the committee on city property, the Providence Home Rule Charter of 1980 became effective on January 3, 1983. Finally, on March 3, 1983, the city council approved and passed Resolution 211, which again authorized the sale of the school and incorporated the recommendations made by the city plan commission. In relation to this action, the city council rescinded the prior resolution, No. 106. On the ensuing day, Resolution 211 was approved by the mayor as well. In light of these bureaucratic affirmations, on June 20, 1983, the mayor executed and delivered a deed of the school to the hospital. In return, the hospital paid to

1. During the course of this second class-action suit, the hospital successfully moved to intervene as a defendant in the case. Consequently, plaintiffs appealed the permitted intervention to this court. On January 31, 1983, we dismissed plaintiffs' appeal as interlocutory. *Dogan v. City of Providence,* 455 A.2d 797 (R.I.1983).

the city the balance of the purchase price due.

As a result of the above transaction, plaintiffs filed a third suit against defendants, seeking to have the sale of the school declared null and void. The plaintiffs also demanded that defendant hospital be enjoined from exercising any ownership rights over the school and its surrounding property. The main contention raised by plaintiffs was that defendant city violated the provisions of the Providence Home Rule Charter regarding the disposal of city property. The trial judge, however, denied the requested action sought by plaintiffs, who now appeal to this court for relief.

The first contention raised by the plaintiffs is that the trial judge erred in finding that the hospital became the equitable owner of the school by the passage of Resolutions 21 and/or 106.

In examining the merits of this claim, we are mindful of the rule that "[c]ontracts with municipalities are measured by the same tests and are subject to the same rights and liabilities as are other contracts." *City of Warwick v. Boeng Corp.*, 472 A.2d 1214, 1217 (R.I.1984). The facts before us indicate that the hospital submitted a sealed bid in letter form offering to purchase the school for $140,000. In addition, the hospital enclosed with its bid a certified check for $14,000, which was payable to the city collector and represented 10 percent of the purchase price. The record discloses that the hospital's bid was the highest submitted by any of the competing potential buyers. It is indisputable that the procedure followed by the hospital and the city in connection with the submission, opening, and receiving of bids was in full accord with all applicable law in force at the time.

In response to the hospital's offer and following the approval of the school's sale by the committee on city property, the city council authorized the mayor by means of Resolution 21 to execute a deed of conveyance of the Summit Avenue property to the hospital. The mayor approved the resolution, and the city collector endorsed and deposited the hospital's certified check. These procedural steps taken by the city in acting upon the hospital's offer constituted an acceptance of Miriam's bid. As a result, a binding executory contract was created between the hospital and the city for the sale of the school. An executory contract is defined as "[a] contract that has not as yet been fully completed or performed." Black's Law Dictionary, 512 (5th ed. 1979). It is evident that before the hospital could fully perform its obligation under the contract and tender the balance of the purchase price due, the city would have to deliver an executed deed and ensure that the disposal of the property was in full accordance with the prevailing municipal legislation. As will become clearer later on, one of the conditions precedent to fully executing the contract at bar was the submission of the school's sale to the city plan commission.

Returning to our present discussion, under Rhode Island law, the vendee in an executory contract for the sale of land becomes equitable owner of such land and the vendor holds legal title merely as security for the purchase price. *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 110, 265 A.2d 429, 433 (1970). We conclude, therefore, that since an executory contract existed between the parties, the hospital, as vendee, became the equitable owner of the school and its surrounding property. Accordingly, we find that the trial judge did not err in determining that the hospital was the equitable owner of the property.

The plaintiffs raise two arguments in connection with this issue. First, plaintiffs claim that Resolution 21 is invalid because it contained no statement pursuant to § 45–2–5 that, in the opinion of the city council, the property had become unsuitable and had ceased to be used for any public or municipal purpose. Since, however, the object of controversy in this case is Providence school land, § 45–2–7 is dis-

positive of this contention raised by the plaintiffs:

> "Providence school land unaffected.— Nothing in §§ 45-2-5 and 45-2-6 shall be construed to amend the provisions of § 15 of chapter 680 of the public laws of 1925, entitled 'An act relative to the management and support of the public schools of the city of Providence.' "[2]

In light of § 45-2-7's exemption in favor of Providence school land from the requirements of § 45-2-5, plaintiffs' argument advocating § 45-2-5's applicability to this matter is without merit.

■ The plaintiffs also claim that Resolution 106 was invlaid because the city council passed the resolution without first referring the issue of the school's sale to the city plan commission as required by Providence ordinance § 2-255. Again, plaintiffs assert that because Resolution 106 is invalid, the hospital may take no rights under that particular municipal legislation. We find, however, that the initial failure of the city council to submit the subject of the school's sale to the city plan commission in no way affected the hospital's previously secured rights as equitable owner of the property under the contract. As we noted earlier, the required submission of the school's sale to the city plan commission was a condition precedent to the final execution of the agreement between the hospital and the city. According to the record, the city plan commission approved of the school's sale with some modifications, which were assented to by the hospital. Thereafter, the sale of the school was consummated. Clearly, the requisite submission pursuant to § 2-255 was met prior to the final execution of the contract. Based on the above analysis, we find plaintiffs' claim that the hospital did not take any equitable ownership rights in the property because Resolution 106 was allegedly invalid to be meritless as well.

The plaintiffs also contend that the trial judge erroneously concluded that defendants never rescinded their contract for the sale of the school and its property. In addressing this claim, we note that it is well settled in this jurisdiction that "to have recission *there must be mutuality expressed or implied.*" (Emphasis added.) *Jakober v. E.M. Loew's Capitol Theatre, Inc.,* 107 R.I. at 112, 265 A.2d at 433-34. In conjunction with this principle of contract law, recission is defined as a *mutual agreement* by the parties to an existing contract to discharge and terminate their duties thereunder. *Id.* at 112, 265 A.2d at 434.

■ Our analysis of the stipulation of facts, to which both sides assented, reveals the following:

---

2. The uncontested facts of this case indicate that the Providence School Committee authorized the sale of the school to a private interest in full compliance with the provisions of P.L.1915, ch. 1274, § 1, as amended by P.L.1925, ch. 680, § 15. These particular statutes are set forth in full as follows:

CHAPTER 1274

"AN ACT AUTHORIZING THE CITY OF PROVIDENCE TO SELL OR OTHERWISE DISPOSE OF ANY SCHOOL ESTATES OR PROPERTIES WHICH ARE UNSUITABLE FOR SCHOOL PURPOSES, OR THE USE OF WHICH FOR SUCH PURPOSES HAS CEASED.

*"It is enacted by the General Assembly as follows:*

SECTION 1. The city council of the city of Providence is hereby authorized from time to time to sell, lease, use for any other public or municipal purpose or purposes, or otherwise dispose of any lands or properties owned by said city, which have been purchased or dedicated in any manner for school purposes, and which shall have become unsuitable or shall have ceased to be used for such purposes." P.L.1915, ch. 1274, § 1.

CHAPTER 680

"SEC. 15. Section 1 of chapter 1274 of the public laws, passed at the January session, A.D. 1915, is hereby amended so as to read as follows:

Section 1. The city council of the city of Providence is hereby authorized *with the approval of the school committee* from time to time to sell, lease, use for any other public or municipal purpose or purposes, or otherwise dispose of any lands or properties owned by said city, which have been purchased or dedicated in any manner for school purposes, and which shall have become unsuitable or shall have ceased to be used for such purposes." (Emphasis added.) P.L.1925, ch. 680, § 15.

"(27) The Hospital at no time intended to rescind, or had any desire whatsoever to rescind, its arrangement with the City to buy the school."

Since the mutual intent of the parties to the contract is required in order to effectuate recission, the above-cited stipulated fact precludes any finding that the contract to sell the school was rescinded. As a result, the trial judge correctly concluded that a recission of the agreement between defendants had never occurred.

The plaintiffs advance in their final argument that the transaction entered into by defendants violates the Providence Home Rule Charter of 1980, which became effective on January 3, 1983. The thrust of this contention is that since the city did not execute and deliver a deed of the premises to the hospital until June 20, 1983, the pertinent provisions of the charter are applicable and effectively void the contract. According to the charter, § 416 establishes an elaborate process that governs the acquisition and disposal of city-owned property. By virtue of § 416, plaintiffs seek to have it apply retroactively to the sale of the school in order to vitiate the agreement between the hospital and the city.

 We begin our review of this issue by articulating the time-honored principle that a statute is presumed to operate prospectively and not retroactively, unless it appears by clear, strong language or by necessary implication that the Legislature intended to give the statute retroactive force and effect. *Emmett v. Town of Coventry*, 478 A.2d 571, 572 (R.I.1984). In relation to this legal precept, we note that rules of statutory construction apply with equal force when a court is called upon to construe an ordinance. *Mongony v. Bevilacqua*, 432 A.2d 661, 663 (R.I.1981). From a reading of the Home Rule Charter, it is evident that there is no language within the charter that purports to make § 416's application retroactive. Consequently, we find plaintiffs' argument on this issue to be unpersuasive because it contravenes the enunciated traditional principle of statutory construction pertaining to retroactivity. Since the hospital and the city entered into a binding executory contract approximately one year prior to the effective date of the Home Rule Charter, it is inapplicable and cannot be used to vitiate the agreement. As a result, we find that the trial judge did not err in determining that the Home Rule Charter does not apply to the contract at bar in this case.

Accordingly, the plaintiffs' appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers are remanded to the Superior Court.

KELLEHER, J., did not participate.