Antone LAWRENCE, Jr., et al.

v.

ANHEUSER–BUSCH, INC., et al.

No. 84–402–Appeal.

Supreme Court of Rhode Island.

April 3, 1987.

E. Howland Bowen, James E. O'Neil, Atty. Gen., Richard B. Woolley, Sp. Asst. Atty. Gen., Providence, for plaintiffs.

Hugh G. Moore, Jr., Warwick, Seth Bowerman, Hanson, Curran & Parks, Stephen A. Fanning, Jr., Edwards & Angell, Providence, for defendants.

## OPINION

FAY, Chief Justice.

This case comes before us on appeal from a grant of partial summary judgment to one of the defendants and full summary judgment to the other two in a wrongful-death action brought in Superior Court under G.L.1956 (1976 Reenactment) § 3–11–1 (the Dram Shop Act). The plaintiffs are Antone Lawrence, Jr., and Mary N. Lawrence, the parents of the decedent and the coadministrators of his estate. The defendants are Fo'c'sle, Inc., a tavern; Anheuser-Busch, Inc., the brewer of Budweiser beer; and McLaughlin and Moran, Inc., the exclusive distributor in Rhode Island of the beverages produced by the brewer. We shall refer to the defendants as the tavern, the brewer, and the distributor, respectively.

The action arose out of an automobile collision that occurred in Little Compton, Rhode Island, on or about June 11, 1978. The plaintiffs' son, Christopher Lawrence, was fatally injured after the car in which he was an occupant collided with an automobile driven by David Hudson. Hudson had been served beer at the tavern prior to the collision.

At the time of the incident in question, Rhode Island's Dram Shop Act provided as follows:

"3–11–1. Liability of furnisher of beverages for injuries by intoxicated persons.—If any person in a state of intoxication commits any injury to the person or property of another, the person who furnished him with any part of the beverage which occasioned his intoxication, *if the same was furnished in violation of this title,* shall be liable to the same action by the party injured as the person intoxicated would be liable to; and the party injured, or his or her legal representative, may bring either a joint action against the person intoxicated and the person who furnished the beverage, or a separate action against each." (Emphasis added.)

In their complaint, plaintiffs allege that the tavern was liable for the wrongful death of their son under the Dram Shop Act for having served Budweiser beer in violation of § 3–8–1 (1) to an intoxicated person and (2) to a person of intemperate habits.[1] The plaintiffs seek to impose liability upon both the brewer and the distributor for the same violations, premising their action upon an alleged agency relationship between each of them and the tavern.[2]

1. The plaintiffs do not specifically cite the version of G.L. 1956 (1976 Reenactment) § 3–8–1 they claim was violated, presumably because they argue, in the alternative, that different versions apply. *See infra,* pp. 868, 871.

2. The plaintiffs further allege that the brewer is strictly liable for having placed an inherently dangerous product into the stream of commerce. This contention was not addressed in their brief to this court or in their memorandum to the trial court in opposition to the motion for summary judgment brought by the brewer. Although the issue was raised briefly at oral argument before both courts, plaintiffs cited no authority for their position. Under our rules, an appellant must "identify the issue he intends to raise, articulate his points of argument, and indicate authoritative sources upon which he relies."

*Walmac Co. v. Zurich Insurance Co.,* 114 R.I. 410, 417–18, 333 A.2d 686, 690–91 (1975). We accordingly find the issue to have been waived. *See Berberian v. New England Telephone and Telegraph Co.,* 117 R.I. 629, 636–37, 369 A.2d 1109, 1114 (1977).

The tavern filed a motion for partial summary judgment in regard to its liability for serving beer to an intoxicated person, and each of the other defendants moved for summary judgment regarding all of the counts against them. The trial justice granted the tavern's motion, finding that the version of § 3–8–1 in effect at the time of the collision did not prohibit individuals licensed to furnish alcohol from serving beverages to intoxicated persons and that the version of § 3–8–1 enacted one year later, which did prohibit such conduct, could not constitutionally be applied retroactively to the tavern. The trial justice also granted summary judgment on all counts to both the brewer and the distributor. The plaintiffs now appeal all three judgments to this court.

▆▆▆ On appeal this court reviews the propriety of a summary-judgment order by the same standards as the trial justice. *Steinberg v. State*, 427 A.2d 338, 340 (R.I. 1981). We examine the pleadings and affidavits in the light most favorable to the nonmoving party and decide if an issue of material fact exists. If not, we determine if the moving party was entitled to summary judgment as a matter of law. *Russo v. Cedrone*, 118 R.I. 549, 555, 375 A.2d 906, 909 (1977); Super.R.Civ.P. 56. Applying this standard to the facts in this case, we find all defendants to have been entitled to summary judgment as a matter of law and affirm the decisions of the trial justice.

I

THE BREWER AND THE
DISTRIBUTOR

The plaintiffs claim that the brewer and the distributor should be held vicariously liable for the actions of the tavern, allegedly in violation of § 3–8–1, relying on a theory of agency. They contend that the statutory scheme regulating the distribution of alcoholic beverages in the state created an agency relationship between the

tavern and each of the other two defendants. We disagree.

▆▆▆ "Agency" has been defined as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) *Agency* § 1(1) (1958). Thus, the three elements required to show the existence of an agency relationship include (1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking. *Id.* at § 1(1) comment b. It is essential to the relationship that the principal have the right to control the work of the agent, *McLaughlin v. Chicken Delight, Inc.*, 164 Conn. 317, 322, 321 A.2d 456, 459 (1973); *Arcell v. Ashland Chemical Co.*, 152 N.J. Super. 471, 494, 378 A.2d 53, 65 (1977); and that the agent act primarily for the benefit of the principal. *Narragansett Wire Co. v. Norberg*, 118 R.I. 596, 605, 376 A.2d 1, 5 (1977).

The plaintiffs neither alleged specific facts nor submitted affidavits relevant to the existence of any of these factors between the tavern and the brewer or the distributor. Both the brewer and the distributor submitted affidavits stating that they had never entered into an agreement either written or oral with the tavern, either for the sale of their products or for any other reason; that they never authorized the tavern to take any action on their behalf or as a representative of their companies; that they had no beneficial interest in the tavern; and that they had no knowledge of the tavern ever purporting to act on their behalf, and that if it had done so, such occurrence would have been without their consent.

▆▆▆ Nor are the factors determinative of agency to be found within the statutory distribution scheme alleged by plaintiffs to

The plaintiffs also claim for the first time on appeal that the brewer is subject to liability under three additional common-law theories. In view of our long-established practice to re-

view only those matters properly brought to the attention of the trial justice, *Cok v. Cok*, 479 A.2d 1184, 1188 (R.I.1984), we shall not address these claims.

create such a relationship. The scheme merely directs the licensed wholesaler, that is, the distributor, to purchase the particular product it desires only from the manufacturer of that product and the licensed retailer to purchase only from licensed wholesalers. G.L.1956 (1976 Reenactment) §§ 3–6–16 and 3–7–18.[3] In fact, as is noted by plaintiffs themselves, the scheme is designed to prevent any influence by a manufacturer over a wholesaler, or by a manufacturer or wholesaler over a retailer, *see* §§ 3–6–15 and 3–7–22—thus prohibiting in effect the very control critical to an agency relationship.[4]

■ Consequently, plaintiffs' claim of vicarious liability against the brewer and the distributor fails. The grant of summary judgment to each of them was accordingly appropriate.[5]

## II

### THE TAVERN

The version of § 3–8–1 in effect at the time of the collision did not prohibit a liquor-license holder from selling or serving beverages to an intoxicated person.[6] The statute, in pertinent part, read as follows:

"3–8–1. Sundays and holidays—Sales to minor—Intoxicated persons and persons of intemperate habits.—Licenses issued under the provisions of this title shall not authorize the sale or serving of beverages on Sunday, nor on Christmas day except in licensed taverns, clubs, victualing houses and retailer's class F licensed places when served with food to guests, and except in places operated under a retailer's class E license described above and except in cars or on passenger-carrying marine vessels operated by holders of class G licenses; provided, that the department may limit the sale of beverages on passenger-carrying marine vessels to the hours from 6:00 o'clock p.m. to 8:00 o'clock a.m. on such days; *nor shall they authorize the sale or delivery to any minor, either for his own use or for the use of his parents, or of any other person of notoriously intemperate habits * * *.*" (Emphasis added.)

Prior to 1966 it was a violation of the statute to sell beverages to intoxicated persons. *See* G.L.1956 § 3–8–1; P.L.1966, ch. 280, § 1. In 1979, § 3–8–1 was amended, prohibiting once again the sale of beverages "to any minor, either for his own use or for the use of his parents, or of any other person; *or the sale of beverages to any intoxicated persons or to any person of notoriously intemperate habits * * *.*" (Emphasis added.) P.L.1979, ch. 326, § 1. The Legislature provided that the amendment should apply retroactively. P.L.1979, ch. 326, § 2.

The plaintiffs argue that the 1979 amendment should be applied retroactively against the tavern so as to permit an action

---

**3.** According to G.L.1956 (1976 Reenactment) § 3–6–16,
"[t]he holders of wholesale licenses in this state shall purchase beverages only from the distillery, rectifier, winery or brewery manufacturing the same * * *."
According to § 3–7–18, as amended by P.L.1976, ch. 245, § 1,
"[a]11 holders of retail licenses except retailer's class G licenses shall purchase beverages for sale under their licenses only from the holder or holders of wholesale licenses under this title."

**4.** According to § 3–6–15,
"[n]o manufacturer of distilled spirits or wines whose principal place of manufacture is outside of this state shall hold a wholesaler's license issued under this title or shall have any interest in such license, either directly or indirectly * * *."

According to § 3–7–22,
"it shall be unlawful for any holder of a manufacturer's or wholesaler's license to have any direct or indirect interest in any retailer's license or in the business carried on under a retailer's license * * *."

**5.** We do not mean to suggest that the brewer in this case is necessarily covered by the statutory provisions that we have cited. We need not address its contention that it is not, since we find no agency relationship to have been created by the statute.

**6.** "Beverage" is defined by § 3–1–1 as "[a]ny liquid which either by itself or by mixture with any other liquid or liquids is or may become fit for human consumption as a drink and which contains five-tenths of one per cent (.5%) or more of alcohol by weight."

to be brought against it under the Dram Shop Act for having served beer to an intoxicated person in 1978. They contend that the state's regulation of the sale of intoxicating beverages falls within its police powers and that the expressly required retroactivity of the amendment to § 3–8–1 must be presumed constitutional absent a showing that the Legislature acted in an arbitrary and irrational fashion.[7]

■ The tavern contends, and the trial court agreed, that retroactive application of the 1979 amendment against it would violate its due process rights under the Fourteenth Amendment to the United States Constitution since the amendment to the statute was substantive, not procedural.[8]

■ The tavern in its argument and the trial justice in his decision rely upon a principle of statutory construction not clearly dispositive in this case. It is the general rule that statutes and their amendments are applied prospectively. *Emmett v. Town of Coventry*, 478 A.2d 571, 572 (R.I.1984). However, if it appears by strong, clear language or necessary implication that the Legislature intended the statute or amendment to have a retroactive effect, it may be applied retroactively. *Dulgarian v. City of Providence*, 507 A.2d 448, 453 (R.I.1986); *Wayland Health Center v. Lowe*, 475 A.2d 1037, 1041 (R.I.1984); *Spagnoulo v. Bisceglio*, 473 A.2d 285, 287 (R.I.1984). In situations in which a statute lacks the requisite specificity or necessary implication regarding retroactivity, the distinction between a substantive statute and a remedial or procedural statute comes into play. If the statute is remedial or procedural, that is, if it "neither enlarges nor impairs substantive rights but prescribes the methods and procedures for enforcing

such rights[,]" *Norton v. Paolino*, 113 R.I. 728, 733, 327 A.2d 275, 278 (1974), it may be construed to apply retroactively. If, however, it creates, defines, or regulates substantive legal rights, it must be construed to operate prospectively. *Narragansett Electric Co. v. Burke*, 122 R.I. 13, 25, 404 A.2d 821, 828 (1979), *cert. denied*, 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980).

■ Here, however, the Legislature in 1979 clearly and specifically articulated its intention that the amendment to § 3–8–1 "shall apply retroactively to any case not barred by the statute of limitations on the date of its passage." P.L.1979, ch. 326, § 2. The "clear enunciation of a legislative choice overrides any constructional preference for prospective or retrospective application that might otherwise obtain." *Raymond v. Jenard*, 120 R.I. 634, 637, 390 A.2d 358, 359 (1978). The substantive/procedural distinction is therefore not dispositive.

■ Although a legislative act regulating the sale of intoxicating beverages is clearly entitled to a strong presumption of constitutionality, *S & S Liquor Mart, Inc. v. Pastore*, 497 A.2d 729, 732 (R.I.1985), its retrospective application must comply with due process. We have previously held that the Legislature is free to enact retrospective legislation as long as it does not impair contractual obligations or interfere with vested rights. *Gorham v. Robinson*, 57 R.I. 1, 42, 186 A. 832, 852 (1936); *Prata Undertaking Co. v. State Board of Embalming and Funeral Directing*, 55 R.I. 454, 470–71, 182 A. 808, 815 (1936). The right of a liquor-license holder to sell beverages to an intoxicated person without po-

---

7. The plaintiffs rely for this argument on the brief of the Attorney General for the State of Rhode Island, submitted in support of the constitutionality of § 3–8–1. The Attorney General was notified of this action in accordance with Supreme Court Rule 32(b), which requires such notice when the constitutionality under the United States Constitution of an act of the General Assembly is questioned in a Supreme Court proceeding to which the state is not a party.

8. We note in passing that under § 3–11–5, one who violates § 3–8–1 may be subject to fine and/or imprisonment. Since the case under consideration does not involve the imposition of these penal sanctions, but rather of liability under the Dram Shop Act, the constitutional prohibition against ex-post-facto laws does not affect the validity of the retroactive application of the amendment. *State v. Brown*, 486 A.2d 595 (R.I.1985); *Cummings v. Church*, 50 R.I. 71, 145 A. 102 (1929); U.S. Const. Art. I, § 10; R.I. Const. art. I, § 12.

tential liability is clearly not a contractual right; the question of whether it is a vested right requires analysis.

In *Raymond v. Jenard,* we concluded that the right to a defense of contributory negligence did not constitute a "vested right" and that the retrospective application of the newly enacted comparative negligence statute against the defendants was constitutional. We recognized the "conclusory" nature of the term "vested right"— that it " 'does nothing more than focus attention on the question as to what circumstances qualify a right to be characterized as "vested".' " 120 R.I. at 638, 390 A.2d at 360. We accordingly applied the approach suggested by Charles B. Hochman in his analysis of Supreme Court decisions on this issue, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692 (1960), to determine if the defendants' right could appropriately be so characterized. *Id.* According to Hochman,

> "from an analysis of the cases it becomes apparent that it is impossible to reduce the potentially infinite variety of situations in which the problem of retroactivity can arise to a single common denominator. However, it is just as clear that the factor most often appearing in these cases is the extent to which the parties have laid reasonable reliance on the law existing at the time of the conduct whose legal consequences the retroactive statute would alter. The importance of this element is apparent when one considers that in very general terms the two major factors to be weighed in determining the validity of a retroactive statute are the strength of the public interest it serves and the unfairness created by its retroactive operation, and the reliance of the parties on preexisting law is perhaps the most accurate gauge of the latter." *Id.* at 727.

Applying the Hochman test for unfairness, namely, whether "the party asserting the 'vested right' relied on the preexisting law," we determined that the defendants clearly did not rely upon the contributory-negligence rule when they committed their allegedly tortious act. Finding the strong public interest in abolishing the harshness of the contributory-negligence rule to outweigh the thus minimal unfairness of the defendants' newly created potential for liability, we concluded that retroactive application of the statute passed due-process muster. *Raymond v. Jenard,* 120 R.I. at 639–40, 390 A.2d at 360–61.

Recent Supreme Court decisions continue to support Hochman's approach. In *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), the Court considered a challenge to the retroactive effects of the Federal Coal Mine Health and Safety Act of 1969 as amended by the Black Lung Benefits Act of 1972. Under Title IV of that act, coal-mine operators were required to compensate former employees disabled by pneumoconiosis even though those employees had terminated their work in the industry before the statute was enacted.

Agreeing that the act had retrospective effects, the Court held that

> "the justification for the retrospective imposition of liability must take into account the possibilities that the Operators may not have known of the danger of their employees' contracting pneumoconiosis, and that even if they did know of the danger their conduct may have been taken in reliance upon the current state of the law, which imposed no liability on them for disabling pneumoconiosis." *Id.* at 17, 96 S.Ct. at 2893, 49 L.Ed.2d at 767.

Noting that the mine operators had clearly been aware of the dangers of pneumoconiosis for twenty years and that they had not pressed the contention that they would have altered their conduct had the law imposed liability upon them at the time, the Court found the retrospective imposition of liability upon them justified as "a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor * * *." *Id.* at 18, 96 S.Ct. at 2893, 49 L.Ed.2d at 768.

In its most recent case dealing with the constitutionality of retrospective legislation, the Court seemed to ignore the balancing it had earlier required, holding that

the retrospective aspects of legislation will meet the test of due process simply if the retroactive application of the legislation is itself justified by a rational legislative purpose. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601, 611 (1984). However, in *Pension Benefit,* those affected by the retrospective provisions in question had ample notice of the liability to which they might be subject and thus had the opportunity to conform to the requirements of the legislation. *Id.* at 732, 104 S.Ct. at 2719, 81 L.Ed.2d at 613.

 In the case before us, it is clear that in 1978 the tavern was aware that by serving beverages to an intoxicated person, it was increasing the possibility that he or she would injure another or another's property. However, it is equally clear that had the tavern known of its potential liability for such damages, it might well have altered its conduct. For unlike the mine operators in *Turner Elkhorn,* whose economic survival depended upon the miners' working in the mine and who could have altered the conditions causing pneumoconiosis only at great expense and with little hope of success, the tavern did not face extinction, or even the radical diminution of its business, by refusing to serve liquor to an intoxicated person; thus it could have done so with little difficulty. The attention currently being paid by servers of alcoholic beverages to recognizing the tell-tale signs of intoxication in order to avoid the extended liability they might face under dram shop acts in many jurisdictions further supports our conclusion. Under the Hochman test, therefore, retroactive application of the amendment would be unfair.

Against the unfairness of retroactivity in this case, we must balance the public interest it serves. The Legislature did not articulate its rationale either for amending the statute or for requiring the amendment to apply retroactively. However, when we consider § 3–8–1 in conjunction with the Dram Shop Act, we can posit a purpose similar to that in *Turner Elkhorn*—namely, to spread the cost of damages caused by intoxicated persons to those who were responsible for, and benefited from, enhancing the potential for such damages.[9]

However, the evaluation of the public interest involved must take into consideration the extent to which this interest "can be implemented only through legislation which operates to alter the legal incidents of preexisting rights." Hochman, 73 Harv. L.Rev. at 701. In situations in which the statute involved is part of a comprehensive regulatory scheme and the "preexisting evil" is not one whose continued existence would significantly impair the effectiveness of that scheme, the public interest in its retroactive application is diminished. *Id.* at 702.

Here, the cost-spreading purpose underlying the 1979 amendment to § 3–8–1 will not significantly be affected if the amendment is not retroactively applied. We therefore find the reliance of the tavern on the preexisting law to outweigh the public interest served by the retroactive application of the amendment and hold such application to be repugnant to due process.

 The plaintiffs contend in the alternative that § 3–11–1, the Dram Shop Act, has incorporated by specific reference the provisions of § 3–8–1 as they existed at the date of the original Dram Shop Act in 1933 and that, therefore, any amendments of § 3–8–1 do not affect it. This argument is derived from a canon that is set forth in 2A Sutherland, *Statutory Construction,* § 57.07 (Sands 4th ed. 1984). The rule is more explicitly and clearly stated by the United States Supreme Court in *Hassett v. Welch,* 303 U.S. 303, 314, 58 S.Ct. 559, 564, 82 L.Ed. 858, 866–67 (1938):

9. This conclusion is supported by the statement of purposes in the Rhode Island Liquor Liability Act, recently enacted by P.L.1986, ch. 537 to supersede the Dram Shop Act, which clearly imposes liability upon a liquor-license holder who negligently or recklessly serves liquor to a "visibly intoxicated individual" for damages proximately caused by the individual's consumption of the liquor. G.L.1956 (1976 Reenactment) §§ 3–14–6(2) and 3–14–7(2). One of the act's three enumerated secondary purposes is "[t]o allocate the liability for payment of damages fairly among those responsible for the damages * * * ." Section 3–14–2(2)(B).

" 'Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute * * *[.] Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.' "

It is obvious that the reference in § 3-11-1 is not to the specific provisions of § 3-8-1 but is a general reference to violations of title 3, which includes numerous sections; thus, the reference is a general rather than a specific one. Consequently, there is no basis for discerning a legislative intent that amendments to § 3-8-1 would not be given full force and effect in determining whether a violation of title 3 had occurred. This argument, thus, is without merit.

 The plaintiffs' final argument with respect to the statute is that the absence of the words "to any intoxicated person" from the 1966 amendment was merely a legislative oversight or a typist's error. The construction of statutes is a matter reserved for the courts, with this court serving as the final arbiter on questions of statutory construction. "[W]hen the language of a statute is clear and unambiguous and does not contradict an evident legislative purpose, there is no need for statutory construction or the use of interpretive aids. The statute must be applied literally by giving the words their ordinary and plain meaning." *Moore v. Rhode Island Share & Deposit Indemnity Corp.*, 495 A.2d 1003, 1004 (R.I.1985); *Fruit Growers Express Co. v. Norberg*, 471 A.2d 628, 630 (R.I.1984); *In re Dina N.*, 455 A.2d 318, 319 (R.I.1983).

Here, the language of the statute is clear. To argue that there was a typist's error or a legislative oversight is mere speculation. The plaintiffs' final contention is therefore also without merit, and the trial justice's grant of partial summary

judgment to the tavern was accordingly appropriate.

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgments of the Superior Court are affirmed, and the papers in the case are remanded to the Superior Court.