DECISION
Before this Court are three consolidated appeals concerning the granting of a new Chevrolet dealership license (the "License") to Hurd Buick-GMC, Inc. ("Hurd") on or about October 13, 1994 by the Rhode Island Motor Vehicle Dealers License and Hearing Board ("Board"). Both Norwood Motor Group, Inc. and Midway Auto Center, Inc. (together "Protestants") objected. These civil actions, two filed by the Protestants and one filed jointly by General Motors Corporation ("GM") and Hurd, challenge the validity of two agency decisions, one affirming, and the other rejecting, the Board's decision granting the license. The consolidated cases present three questions: (1) which, if either, of the two contrary agency decisions, one by Transportation Director Dante Boffi ("Boffi") and the other by Director of Administration Jerrold Lavine ("Lavine"), has any authority, (2) whether Protestants' appeal of the Board's decision must be dismissed for their failure to timely exhaust administrative remedies, and (3) whether Protestants have raised any grounds to overturn the Board's granting of the License. Jurisdiction in this Court is pursuant to R.I.G.L. 1956 (1993 Reenactment) §42-35-15, as amended.
Facts/Travel
On May 4, 1994, GM mailed the required notification, informing the Chevrolet dealerships within Johnston's relevant market area[1] of its plans to approve the construction of the Hurd Chevrolet dealership in Johnston, created from the bankruptcy of a Providence Chevrolet dealership in the previous year. See R.I.G.L. § 31-5.1-4.2(c). The Board received timely letters of protest from Norwood and Midway.
Hearings were held on seven occasions between July 28, 1994 and September 27, 1994. Six witnesses were called to testify before the Board. James Anderson, Chevrolet Zone Manager David Walshi, and Judd Hurd testified as experts for GM concerning the decline in Chevrolet dealers in the relevant market area since 1990. They also testified that the remaining dealers had not picked up the lost sales, and due to this loss, Chevrolet's market share declined thirty percent in Rhode Island. Tamrah Thomas, Linda Sawyer and Thomas Ricci testified as expert witnesses for the Protestants.
On September 27, 1994, the Board orally announced its decision to grant the License to Hurd. On October 4, the Board issued its written decision containing nine findings of fact from which the Board concluded that the market could sustain an additional Chevrolet dealership and that the additional dealership would not negatively affect the existing Chevrolet dealerships.[2]
On October 13, 1994, the Protestants filed an appeal of the Board's decision. The appeal was addressed to Mr. Charles Dolan, Chief of Regulations Office, Division of Motor Vehicles ("Dolan") and to Mr. Dante Boffi, Director, Rhode Island Department of Transportation. On November 22, 1994 Dolan issued a letter announcing Boffi's decision to reverse the Board, thereby revoking Hurd's License.
On December 9, 1994 GM filed an appeal of the November 22nd decision with Lavine of the Department of Administration claiming the November 22nd decision a nullity because it rested on Boffi's improper action. GM included as an attachment to their appeal, a legal opinion of Leonard F. Clingham, Chief Legal Counsel, Department of Administration, dated December 1, 1994, declaring that subsequent to July 1, 1994, any "purported decisions of the Director of Transportation relating to . . . appeals are null and void, ab initio, for lack of jurisdiction." On December 14, 1994, Lavine declared null and void Boffi's November 22 decision to revoke Hurd's License, reinstated the Board's initial decision, and announced that he would accept the Protestants' October 13, 1994 letter to Boffi as a timely appeal to his office and would conduct his own review of the Board's original October 4 decision. On December 21, 1994 Lavine issued a decision upholding the Board's October 4 decision to grant the License to Hurd.
Consequently, on December 16, 1994, Protestants filed a petition in this Court seeking a declaration that Boffi's reversal was a valid order (C.A. 94-6889). On December 23, 1994 GM and Hurd responded by filing an action seeking confirmation that Boffi's decision was void and, in the alternative, seeking judicial review of Boffi's decision. (C.A. 94-6992). The Protestants then filed a second action seeking review of Lavine's decision. (C.A. 95-221).
Therefore, before this Court are two contradictory decisions concerning Hurd's Chevrolet license. Only one may stand.
Standard of Review
The review of a decision of the Commission by this Court controlled by R.I.G.L. § 42-35-15(g) which provides for review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1303 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commission's decision. Newport Shipyard v. RhodeIsland Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v.George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept.of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council,434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts.Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. On review of the Superior Court's judgment, the Supreme Court determines whether legally competent evidence exists to support the decision of the Superior Court. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
The hearings before the Board concerning Hurd's application for a new dealership license began in July of 1994 and continued through September 1994. Also, in July 1994 the legislation concerning motor vehicle licenses was amended.
Prior to July of 1994, an appeal from a Board decision was taken to the Director of Transportation. The 1994 amendment changed this procedure; currently all appeals are directed to the Department of Administration. Section 31-5-2.1(d) states "[t]he Board shall constitute an agency and shall follow the Administrative Procedure Act and its decisions are appealable to the Director of the Rhode Island Department of Administration. The Director's decision shall be appealable to the Rhode Island Superior Court." This change was made in light of the amendments to §§ 31-5-1 and 31-5-2 in response to the Registry of Motor Vehicles being transferred from the Department of Transportation to the Department of Administration. Consequently, after July of 1994 any appeal of a Board decision must be directed to the Director of the Department of Administration.
In the case at bar, Hurd's request for a license was filed prior to the pertinent amendment coming into effect, but the extended hearings on the issue and ultimate decision to grant the license were made after the amendment. The Board issued its opinion on October 4, 1994 granting Hurd its requested license. On October 13, 1994 Appellants filed their appeal to the Director of the Rhode Island Department of Transportation and the Chief of Regulations of the Division of Motor Vehicles. Consequently, on December 2, 1994 the Director of Transportation reversed the Board's October 4 decision and thereby revoked Hurd's license.
Thereafter, on December 9, 1994, Hurd appealed the December 2 ruling to the Department of Administration. Hurd claimed that the December 2 ruling had no effect because the Department of Transportation had no jurisdiction or authority to review the Board's decision after July of 1994. Hurd requested that the December 2 ruling be found null and void.
Just one day prior, on December 8, 1994 the Protestants, in recognition of the amendments to the relevant statute filed an appeal with Lavine enclosing a copy of their October 13, 1994 appeal, thereby requesting that Lavine find that their appeal was timely.
On December 15, 1994, Lavine declared the December 2 reversal null and void due to the lack of jurisdiction of the issuing party. Lavine stated that he would accept the Appellants appeal as timely filed, although in the wrong office, and would review the matter in his official capacity. Consequently, Lavine upheld the Board's decision to grant Hurd the License on December 21, 1994. Lavine found that the Board "carefully considered the statutory requirements" and that the new dealership would not adversely affect the investment of existing franchises.
Appellants now contend that the December 2 revocation of Hurd's License must be recognized by this Court. Appellants argue that the change in the appeals procedure only affects license requests made after July of 1994 and therefore the old statute still remains the law of this case.
It is the general rule that statutes and their amendments are applied prospectively. However, if it appears by clear language or necessary implication that the Legislature intended the statute or amendment to have retroactive effect, it may be retroactively. Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 869 (R.I. 1987). However, this principal of statutory construction may be modified depending on whether the statute at hand is considered to be procedural or substantive. "If the statute is remedial or procedural, that is, it `neither enlarges nor impairs substantive rights but prescribes the methods and procedures for enforcing such rights' it may be construed to apply retroactively." Id. (citing Norton v. Paolino, 113 R.I. 728, 733, 327 A.2d 275, 278 (1974)). In the alternative, if the statute creates, defines or regulates "substantive legal rights" it must be applied prospectively. Id. A review of the 1994 amendment shows no direct expression of retroactivity nor any mandate to do so. Furthermore, such an application does not violate any vested rights nor does it impair any contractual obligations. Consequently, although there is extreme judicial reluctance to give retrospective interpretations to statutes that alter the jurisdiction exercised by courts, see Fox v. Fox,350 A.2d 602, 604 (R.I. 1976), the amendment at hand only changed to whom an appeal is addressed in response to the restructuring of the Department of Transportation and Registry of Motor Vehicles. Therefore, it was appropriate for Lavine to take this appeal as timely filed as jurisdiction was with the Director of Administration as to all appeals taken after the July amendment went into effect no matter when the initial license application was filed.
Based upon the fact that the amendment was procedural and is to be applied retroactively, Lavine's decision to uphold the Board's decision to grant Hurd the License must be recognized and the decision to declare the action taken by of the Director of Transportation as null and void based upon his lack of jurisdiction to rule on the appeal must be upheld. Consequently, this Court, in its capacity of a reviewing authority in regards to the Administrative Procedures Act, must review the decision by the Director of Administration pursuant to § 42-35-15(g).
Protestants argue in their appeal to this Court that the Board and Lavine did not make adequate findings to support the granting of the License to Hurd and therefore the granting of the License must be reversed. Protestants argue that the Board's decision is erroneous because (1) the Board "failed to take into consideration the permanency of the investment of the existing motor vehicle dealers in the community, (2) the Board "failed to consider whether the existing dealers of the same line were providing adequate consumer care" and (3) that Lavine's decision is void because it failed to correct errors committed by the Board and neglected to state findings of fact or conclusions of law." (Protestants' Memo at pg. 3).
Rhode Island General Law § 31-5.1-4.2(b) states what determines "good cause" for denying or granting a requested franchise license. It states in relevant part:
 (b) In determining whether good cause has been established for not entering into or relocating an additional franchise for the same line make, or adding an additional location for an existing new motor vehicle dealership, the department shall take into consideration the existing circumstances, including, but not limited, to:
 (1) Permanency of the investment of the existing new motor vehicle dealer(s) in the community;
 (2) Whether the new motor vehicle dealers of the same line make in that relevant market area are providing adequate consumer care for the motor vehicles of the line make in the market area which shall include the adequacy of motor vehicle sales and service facilities, equipment, supply of motor vehicle parts, and qualified service personnel;
 (3) Whether there is reasonable evidence that after the granting of the new motor vehicle dealership, that the market would support all of the dealerships of that line make in the relevant market area;
 (4) Consequently, whether it is injurious to the public welfare for an additional new motor vehicle dealership to be established.
Protestants argue that the required findings of fact were not made and that there was no competent evidence presented to support the Board's conclusion. Protestants argue that the Board ignored factors the statute provided were relevant. In his decision Lavine relied on the Board's findings where he concluded: "My review of the evidence produced before the Board supports my belief that the Board carefully considered the statutory requirements before granting the new Chevrolet dealership to Hurd at the Johnston location. Thus, I must uphold the Board's decision."
This Court cannot substitute its judgment for that of the Board in regard to credibility of witnesses or questions of fact.Costa, 543 A.2d at 1309. A court will reverse factual conclusions of a board only when they are found to be devoid of competent evidentiary support. Milardo v. Coastal Resource ManagementCouncil, 484 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding on this Court. Carmody v. R.I. Conflict ofInterest Commission, 509 A.2d 453, 458 (R.I. 1986).
Protestants contend that the Board failed to take into consideration the evidence submitted as to the existing dealers in the area as required by § 31-5-1-4-.2(b). The record does not support Protestants argument. There is competent evidence in the record to support the Board's decision. The Board's written findings, seven (7) though nine (9) indicate that the Board found Hurd' s witness more credible with respect to satisfying §31-5.1-4.2(b) and therefore relied to a greater extent on their testimony. All § 31-5.1-4.2(b) requires is that the Board take into consideration the existing circumstances and lists certain factors. But the statute itself states that the Board's decision is not solely limited to these listed factors, nor does the statute state the weight to be given each factor. Consequently, the Board need not have given the weight nor the reliance that the Protestants request.
Consequently, the Board, based upon the testimony presented before it, had before it competent evidence to determine that the Johnston area could support another new car dealership.
After a review of the record, this Court finds the decision by Lavine and the Board granting Hurd the License is supported by reliable, probative, and substantial evidence and that substantial rights of the appellant have not been prejudiced. Accordingly, Lavine's decision is upheld, and the decision by Boffi is declared null and void for lack of jurisdiction.
Counsel shall submit an appropriate order.
[1] The relevant market area is a 20 mile radius from the proposed location of the new dealership.
[2] FINDINGS OF FACT
1. That the Rhode Island Market would support one (1) additional Chevrolet dealer.
2. The Public would benefit from a dealer in the Johnston, Rhode Island area. That there were nine (9) dealers in Rhode Island in 1990, and now there are presently six (6) dealers.
3. That Hurd Buick-GMC, Inc. has established permanency of its investment at the Johnston location.
4. That Chevrolet's national penetration rate has remained constant with its present six (6) dealers, whereas its Rhode Island penetration rate has decreased as the number of Chevrolet dealers has decreased. See Applicant's #3/206383, 206470, 206160.
5. That with the closings of Liberty, Webber and Scuncio, Chevrolet sales were lost and the existing dealers did not pick up those lost sales. See Applicant's #3/206168.
6. That the Johnston site has a population that can better afford to purchase new cars. See Applicant's #3/0131354.
7. That the protestant's expert testified that she did not review and therefore could not dispute the findings of Applicant's Exhibit #3/2688002.
8. That the protestants' expert testified that the Chevrolet market penetration would increase with the opening of a new dealership, but could not quantify it.
9. That the protestants complained about inventory, or the lack thereof, causing decreased market penetration, yet Norwood testified that if Liberty were to re-open at the old Liberty site, it would not protest. It would seem that an inventory problem, if real, would exist regardless of the site location.