333 A.2d 686.

THE WALMAC COMPANY, INC. *vs.* ZURICH INSURANCE COMPANY.

THE WALMAC COMPANY, INC. *vs.* UNITED STATES FIRE INSURANCE COMPANY.

MARCH 21, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. These two cases involve claims under fire insurance policies issued by the defendants. The cases were originally brought in the Sixth Division District Court where judgments were entered for the defendants. The plaintiff appealed to the Superior Court, and the cases were consolidated for trial and heard before a justice of that court sitting with a jury. The jury returned a general verdict for the defendant in each case, and then the plaintiff, without filing a motion for a new trial in either case, appealed to this court.

The pertinent facts are briefly as follows. The defendants each issued a standard fire insurance policy to plaintiff, effective from August 22, 1960 to August 22, 1963, on premises located at Weybosset and Eddy Streets in Providence. On December 10, 1962, at 7:22 p.m. the Providence Fire Department, under the command of the then Lieutenant Eugene F. Gilchrist, responded to an alarm at the insured premises.

412

The plaintiff filed claims under the policies for damages it claimed resulted from the fire. The defendants disclaimed liability under the policies. As a result of such disclaimer plaintiff brought suit.

Although in the absence of a motion for a new trial, it is our duty to consider all of the evidence and reasonable inferences deducible therefrom in the light most favorable to defendant,[1] we shall set forth briefly the evidence presented by the opposing parties in order to present a clearer picture of the background of this dispute.

At the trial in the Superior Court plaintiff presented witnesses who testified that due to accumulated gas in the boiler there was a sudden explosion of flash fire; that the boiler had ruptured due to an explosion and flash fire; that the "transite" plate above the boiler was black from soot and surrounded by charred lumber; and that the jacket and enamel coating on the exterior of the boiler were burned off. One of plaintiff's witnesses, a plumber and heating expert, testified that in his opinion, the burning of the jacket and charring off of the coating could have been caused by fire.

Another of plaintiff's witnesses testified that he saw evidence of fire, that he smelled fumes and smoke, that the ceiling was burned, all charred, scorched above the boiler, and that the boiler jacket was completely ruptured and the boiler wide opened and all burned. The plaintiff presented other witnesses who testified to the same effect.

---

[1] In *Halpert* v. *Rosenthal*, 107 R. I. 406, 410, 267 A.2d 730, 732 (1970), we pointed out that

"The absence of a motion for a new trial narrows the scope of an inquiry on appeal. Instead of being concerned with the credibility of witnesses or the weight of the evidence as we would be were we reviewing the usual motion for a new trial, we apply the standards applicable to a motion for a directed verdict. In doing so, it is our duty to consider all of the evidence and reasonable inferences deducible therefrom in the light most favorable to defendant."

The defendants' testimony is in direct conflict with plaintiff's with respect to the question of whether or not there had been a fire or explosion. Lieutenant Gilchrist testified that when he arrived at the premises he observed that the sprinkler alarm bell was sounding; that the boiler was in a cherry-red condition at the bottom one-third; that by the term "cherry-red" he meant that the degree of heat in the boiler gave it the appearance of being "cherry-red"; that a sprinkler-head over the boiler had been activated; that the fire department arrived at approximately 7:23 p.m. and left 46 minutes later at 8:09 p.m.; that he ordered his men to stop laying the hoses when he saw it was the boiler and he shut off the sprinkler system; that no hoses or equipment were used; and that he shut off the main gas supply to the boiler, which started a cooling-down process.

He further testified that there was no explosion in the fire box, nor evidence of any burning outside the boiler; that in looking around in the basement he did not see any charred joists nor did he observe the ceiling charred; and that upon his return to the station he made out a report entitled, "Report of Alarm other than for Fire in a Building."

The defendants also presented the deposition of Joseph Raymond Jansen, a former inspector in the Fire Prevention Bureau of the Providence Fire Department. He gave his deposition on September 11, 1970, because of the fact that he had retired from the fire department and was moving permanently to Florida. His testimony is in substance as follows. On December 10, 1962, he was an inspector in the Providence Fire Department, where he had been employed for approximately 33 years. A day or two after December 10, 1962, he went to plaintiff's premises to investigate the call for apparatus on December 10, 1962. He went down to the basement and found that all of the asbestos had been washed off the top of the boiler because of the effect of the sprinkler which was overhead. The boiler appeared to him

to have been red hot. He had an opportunity to inspect the wood beams and floor joists around or near the boiler and found no evidence of damage to the beams or the joists. He found no evidence of smoke, smudge or soot to indicate that a fire had been present in the area. He inspected upstairs to see whether there was any evidence of smudge, soot, or smoke on the first floor above the cellar. He found none. He found no evidence of fire damage at any place in the building at any time after the alarm on December 10, 1962.

Inspector Jansen further deposed that at no time did he ever indicate to Mr. Walter I. Sundlun, an officer of plaintiff corporation, that there had been a fire on the premises. He stated that it was the sprinkler alarm that activated the call for the Providence Fire Department apparatus. On cross-examination he stated that during his years of service with the department he had investigated eight or nine hundred fires. He further stated that his opinion concerning the lack of fire and damage resulting therefrom to plaintiff's building was based on his personal observations at the insured premises and his previous experience in the Providence Fire Department.

I

The first assignment of error urged by plaintiff is that the trial justice erred in sustaining defendants' objection to Walter I. Sundlun participating in the case as a trial counsel. Mr. Sundlun, a member in good standing of the bar of this state, testified that he was the treasurer of plaintiff corporation and its attorney for a number of years. He commenced these actions in his capacity as corporate counsel. His firm, Baker and Sundlun, and Raymond Surdut, Esquire, appear as attorneys of record for plaintiff. Mr. Sundlun and his son are stockholders of plaintiff corporation. Mr. Surdut opened plaintiff's case to the jury and then called Mr. Sundlun as the first witness. When the first recess was called, defendants' counsels indicated to the trial

justice in chambers their objection to Mr. Sundlun's partici-
pation as both a witness and trial counsel. The trial justice
sustained the objection and allowed Mr. Sundlun to appear
as a witness only. The trial justice made the same ruling in
rejecting Mr. Sundlun's request to address the jury in clos-
ing arguments.

In requesting permission to participate as trial counsel,
Mr. Sundlun admitted that it was not a "* * * very palat-
able thing for a lawyer to do, to be a witness and counsel
too." He said that while he had absolute confidence in Mr.
Surdut as a lawyer, he did not believe Mr. Surdut was as
fully informed about the case as he was. He also said that
a number of things had happened and that he was probably
the only informed person who could present these to the
court.

We do not find it necessary to discuss this issue at any
great length nor do we believe it is necessary to determine
whether or not any of the canons of professional responsi-
bility or ethics are applicable here. Even if we assume, with-
out deciding, that the trial justice erred in rejecting Mr.
Sundlun's request, plaintiff has failed to point out how its
rights were in any way prejudiced by the trial justice's
ruling limiting Mr. Sundlun to his status as a witness. The
plaintiff makes no claim that Mr. Surdut was incompetent
in prosecuting its cases. In the absence of a showing of
prejudice we cannot say that the ruling constitutes revers-
ible error. *Kishfy* v. *Kishfy,* 104 R. I. 61, 241 A.2d 827
(1968).

## II

We consider next plaintiff's contention that the trial jus-
tice erred in refusing to permit Mr. Sundlun to testify as to
what was said to him by Mr. Tainsch, whom he described as
"* * * the adjuster appointed by the insurance company for
the five—four companies." There is no testimony in the
record from either of defendants regarding the agency status

of Mr. Tainsch or the scope of his authority to act on behalf of defendants. When Mr. Sundlun attempted to relate a conversation he had with Mr. Tainsch, defendants objected on the ground of hearsay and brought to the court's attention the fact that Mr. Tainsch was deceased. The trial justice sustained defendants' objection.

The trial justice then excused the jury in order to permit plaintiff's counsel to make an offer of proof. The plaintiff's counsel made a lengthy statement, which was supplemented by a statement made by Mr. Sundlun de bene. We have read these statements which take up about four pages in the transcript. In our opinion they do not constitute a proper offer of proof because they do not reveal anything as to precisely what was said by Mr. Tainsch to Mr. Sundlun which would be material or relevant to the issues in the case. The statements made by plaintiff's counsel and by Mr. Sundlun, as a witness, do not meet the tests set forth in *Manning* v. *Redevelopment Agency*, 103 R. I. 371, 378-79, 238 A.2d 378, 382-83 (1968), regarding an offer of proof. Hence, there is nothing in the record before us upon which we can determine whether prejudicial error was committed by the trial justice in sustaining defendants' objection.

We agree with defendants that the same situation exists with respect to the question whether plaintiff can rely on the hearsay exception set forth in G. L. 1956 (1969 Reenactment) §9-19-11, which permits the admission of a declaration of a deceased person under certain circumstances, despite its hearsay character. Section 9-19-11 states, in pertinent part, as follows:

> "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

We find nothing in the record or in the offer of proof that would have afforded the trial court an opportunity to deter-

mine whether anything that Mr. Tainsch might have said to Mr. Sundlun during the course of their dealings might be deemed admissible because it met the standards of §9-19-11. Even if we assume that the plaintiff hoped to prove by the admissions of statements allegedly made by Mr. Tainsch what his status as an agent of defendant companies was, such evidence would have been inadmissible in the absence of further evidence from other sources as to the scope of his authority. Under our cases where the existence of a principal-agent relationship is alleged and in issue, it is generally held that extrajudicial statements and declarations sought to be attributed to the purported agent are inadmissible to prove the agency under the hearsay rule, *Mello* v. *Coy Real Estate Co.*, 103 R. I. 74, 78, 234 A.2d 667, 670 (1967), and, as pointed out in *Furlong* v. *Donhals, Inc.*, 87 R. I. 46, 53-54, 137 A.2d 734, 738 (1958), an agency cannot be established by acts of a professed agent unless the acts are of such a character and so continuous as to justify a reasonable inference that the principal had knowledge of them.

Finally, plaintiff argues that Mr. Tainsch's statements to Mr. Sundlun are admissible under the res gestae exception to the hearsay rule. This argument is so lacking in merit as to require no discussion.

### III

The plaintiff's Specifications of Errors include the following alleged error by the trial justice:

"2. Admission of, Jansen report, as defendant's Exhibit E. (Tr. p. 173)."

The plaintiff made no further mention of this alleged error either in its brief or in oral argument before us. Under our practice any point of appeal which is neither briefed nor argued is deemed to be waived, *Cavanaugh* v. *Palange*, 111 R. I. 680, 684, 306 A.2d 182, 184-85 (1973), and under our rules the appellant must identify the issue he intends to

raise, articulate his points of argument, and indicate authoritative sources upon which he relies. *Sunny Day Restaurant, Inc.* v. *Beacon Restaurant, Inc.*, 103 R. I. 707, 241 A.2d 295 (1968), and Sup. Ct. R. 16(a). Since plaintiff has done nothing more than specify this alleged error in the index to its brief, this assignment of error is deemed to be waived.

## IV

The plaintiff's index to its Specifications of Errors also contains the following:

> "6. The Court's refusal to grant the following charges to the jury, to wit:—
>
> Nos. 1-4-5-9-10-11-12-13-14-15-16-17-18-20-22-23-25-26-27-28-30."

But plaintiff has neither briefed nor argued this point. In the circumstances what we said in Point III above applies equally here. This point is deemed to be waived. *Cavanaugh* v. *Palange, supra; Devereaux* v. *Kelly*, 106 R. I. 499, 261 A.2d 843 (1970).

The remaining arguments made by the plaintiff have been considered by us, even though we have not specifically referred to them. Because they lack merit, we summarily dispose of them without discussion.

The plaintiff's appeal in each case is denied and dismissed, and the judgments appealed from are affirmed.

*Baker & Sundlun, Walter I. Sundlun,* for plaintiff.

*Gunning, LaFazia, Gnys & Selya, Inc.. Richard T. Linn,* for Zurich Insurance Company; *Hanson, Curran, Bowen & Parks, William A. Curran,* for United States Fire Insurance Company, defendants.