**Jeffrey S. GORDON**

v.

**CLIFFORD METAL SALES CO., INC.**

**No. 90–241–Appeal.**

Supreme Court of Rhode Island.

Jan. 23, 1992.

Douglas James Rose, McGovern & Noel, Ltd., Providence, for plaintiff.

Susan Thurston, Diane Finkle, Allan Shine, Winograd & Shine, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter comes before this court on appeal by Maksteel Quebec, Inc. (Maksteel), from a denial by the Superior Court of its petition to reclaim coils of cold-rolled steel (steel) from Clifford Metal Sales Co., Inc. (Clifford). Maksteel is a Canadian corporation, and Clifford is a Rhode Island corporation now in receivership. The Superior Court applied Rhode Island law, as opposed to Quebec law as urged by Maksteel, and held Maksteel's interest in the steel to be an unperfected security interest subordinate to the duly perfected security interest of Fleet National Bank (Fleet) and the lien-creditor status of the receiver. We affirm.

The facts are undisputed. On January 10, 1990, the Superior Court granted the petition of Jeffrey S. Gordon, sole stockholder of Clifford, to place Clifford into receivership. The court appointed Allan M. Shine receiver for Clifford.

Thereafter, Fleet filed a proof of claim in this receivership proceeding, asserting a security interest in all present and subsequently acquired property of Clifford. The filing of a financing statement with the Secretary of State for the State of Rhode Island on October 6, 1988, duly perfected this proof of claim. Fleet's security interest included Clifford's fixtures, inventory, accounts receivable, and all other tangible and intangible property, whether then owned or thereafter acquired.

Between the months of June and October 1989, prior to the initiation of receivership proceedings, Clifford ordered by mail or telephone steel from Maksteel, all of which was delivered in 1989 to Clifford's place of business in Providence, Rhode Island. In relation to each purchase order, both a bill of lading and an invoice were issued. Each bill of lading stated that "this material remains the property of MAKSTEEL QUEBEC INC. until full payment." Each invoice referenced the corresponding bill of lading and indicated the shipment price in United States dollars. Payment, however, was to be made to Maksteel in Quebec in terms of Canadian dollars. To date Maksteel remains unpaid in the amount of $197,745 in American dollars for the steel shipped to Clifford.

At the time it was petitioned into receivership, Clifford retained at its facility in Providence approximately $41,000 of steel delivered by Maksteel. On January 26, 1990, Maksteel petitioned the Superior Court for permission to reclaim the steel on the grounds that it owned the steel and that it had attempted to file a financing statement with the Secretary of State's office to secure its interest in the steel.

On February 20, 1990, the hearing on Maksteel's petition to reclaim was held before the Superior Court. By order dated April 5, 1990, the Superior Court ruled that the law of the situs of the inventory, Rhode Island, applied to the priority dispute of the parties. The Superior Court denied Maksteel's petition on the basis that it held an unperfected security interest in the steel, subordinate to the rights and interests of the receiver and Fleet.

Although Maksteel sought to enjoin the receiver from disposing of the steel, the Superior Court denied Maksteel's motion for stay pendite lite on May 9, 1990. Thereafter, this court denied Maksteel's Motion for injunction pendite lite on June 14, 1990. This court entered an order allowing for the sale of the steel by the receiver, under the strict proviso that any proceeds of the sale of the steel be deposit-

ed into the registry of the Superior Court. This court further ordered that Maksteel would retain the same rights to the proceeds of any sale of the steel as Maksteel would subsequently be determined to have in the steel. Accordingly, the receiver sold the steel for $27,949.60 and paid the proceeds into the Superior Court registry. Maksteel filed its notice of appeal with this court on April 14, 1990.

Maksteel claims that it is entitled to the proceeds of the sale of the steel it previously sold to Clifford because, under the laws of Quebec, it was entitled to reclamation of the steel from the defaulting buyer, Clifford. Maksteel contends that the trial justice erred in his application of the substantive law of Rhode Island and that he erroneously relied on federal bankruptcy law in determining that the law of Rhode Island, rather than that of Quebec, is controlling. Maksteel's argument is without merit.

■ It is well settled that the forum state is required to apply its own conflict-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The forum state is also free to characterize the nature of the dispute. *See* Restatement (Second) *Conflict of Laws* § 124, comment a at 354 (1971). This dispute involves the competing interests of three parties in inventory previously located at the business facility of Clifford, a company now in receivership. These three parties are Maksteel, the reclaiming seller; the receiver, a statutory lien creditor;[1] and Fleet, a prior duly perfected secured creditor.[2] Accordingly we characterize this dispute as one concerning the priority and perfection of a secured transaction.[3] Hence we begin our analysis with the law governing commercial secured transactions.

Rhode Island has adopted the Uniform Commercial Code (the code), including its choice-of-law provision, G.L.1956 (1985 Reenactment) § 6A–1–105(1). This provision, entitled "Territorial Application of title 6A—Parties' power to choose applicable law," provides that:

"(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement title 6A applies to transactions *bearing an appropriate relation to this state.*" (Emphasis added.) Section 6A–1–105(1).

■ The trial justice correctly ruled that Rhode Island law bears the most appropriate relation to the instant transaction. The trial justice relied on two entirely different bodies of law to reach this conclusion, both of which we deem appropriate. First, the trial justice based his decision on the proposition that the law of the state of the situs of the steel at the time of insolvency of the debtor is controlling. In reliance on that proposition the trial justice cited *In re Duplan Corporation*, 455 F.Supp. 926 (S.D.N.Y.1978) (*Duplan*) and *In re Dennis Mitchell Industries, Inc.*, 419 F.2d 349 (3rd Cir.1969) (*Dennis*). The trial justice reasoned that because the inventory was located in Rhode Island when Clifford took possession of it, as well as at the time the receivership proceeding was initiated, Rhode Island law bears an appropriate relation to the present dispute and is, therefore, controlling.

Both *Duplan* and *Dennis* held that the law of the jurisdiction where the property was located when the security interest attached governs the validity and perfection of the purported security interest. Al-

1. *See* G.L.1956 (1985 Reenactment) § 6A–9–301(3).

2. *See* G.L.1956 (1985 Reenactment) § 6A–9–303.

3. Maksteel's argument speaks in terms of general contract principles. Maksteel, however, asserts that it has retained an interest in the steel. Section 6A–9–102(1)(a) makes the law of se-

cured transactions applicable "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures."; *see also* § 6A–2–401(1) which states, "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

though Maksteel seeks to distinguish these cases because they involved bankruptcy proceedings and a trustee in bankruptcy (unlike the present situation involving a receivership proceeding and a receiver), this argument is without merit.

In both cases the bankruptcy courts applied the applicable state commercial-code law with respect to issues concerning the choice of law and the perfection and priority of security interests. Furthermore, "[w]here a transaction has significant contacts with a state which has enacted the [Uniform Commercial Code] and also with other jurisdictions, the question [in regard to] what relation is 'appropriate' is left to judicial decision. In deciding that question, the court is not strictly bound by precedents established in other contexts." Section 6A–1–105 (official comment ¶ 3). We believe the trial justice correctly analyzed the instant dispute under the rationale of *Duplan* and *Dennis* to reach the conclusion that Rhode Island law controls this dispute.

Moreover, that same conclusion is reached upon application of the specific choice-of-law provision embodied in chapter 9 of title 6A of Rhode Island's Uniform Commercial Code governing secured transactions. G.L.1956 (1985 Reenactment) § 6A–9–103(1)(b), as amended by P.L.1987, ch. 271, § 5. When referring back to § 6A–1–105(1), one finds that that section specifically excepts from the general conflict-of-law provision items set forth in subsection (2) of § 6A–1–105, including, inter alia "[p]erfection provisions of the article on secured transactions. Section 6A–9–103." Section 6A–1–105(2). Accordingly, § 6A–9–103 "should be consulted as to the rules for perfection of security interests and the effects of perfection and nonperfection." Section 6A–1–105 (official comment ¶ 6). This section, entitled "Perfection of security interests in multiple state transactions," provides that, with respect to ordinary goods,

"(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of a security interest in collateral are governed by the *law of the jurisdiction where the collateral is when the last event occurs* on which is based the assertion that the security interest is perfected or unperfected." (Emphasis added.) Section 6A–9–103(1)(b).

■ Pursuant to § 6A–9–109, the steel, as inventory, is classified as "goods" if it is "held by a person who holds [it] for sale or lease or to be furnished under contracts of service or if he has so furnished [it], or if [it is] raw materials, work in process or materials used or consumed in a business." Section 6A–9–109(4). The collateral in dispute clearly fits into the definition of inventory contained in § 6A–9–109(4) and is therefore considered ordinary goods under § 6A–9–103(1). Accordingly Rhode Island law controls this dispute if Rhode Island is determined to be the jurisdiction where the "last event" of asserted perfection took place. Section 6A–9–103(1)(b).

There is no dispute that the inventory in question was located at Clifford's business premises in Providence, Rhode Island from the time of its delivery on October 16, 1989, until it was sold with the permission of the Superior Court on September 10, 1990. It is further undisputed that the steel was located in Rhode Island almost three months prior to Clifford's being placed into receivership. Hence, whether Maksteel asserts that its security interest attached on the date of delivery or on some subsequent date, the law of Rhode Island controls as it is the jurisdiction where the inventory was located when the "last event" of asserted perfection took place. Section 6A–9–103(1)(b).

■ The second body of law relied upon by the trial justice in determining that Rhode Island law controls this dispute is the Restatement (Second) *Conflict of Laws* § 6 (1971). The trial justice weighed the following factors "with an eye for determining which forum bears the most appropriate relation to the transaction":

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of

those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied." Restatement (Second) *Conflict of Laws* § 6.

The trial justice correctly concluded, upon consideration of the forementioned factors, that Rhode Island law has the most appropriate relation to this transaction. The trial justice focused on four of the seven factors delineated in § 6 of the Restatement (Second) *Conflict of Laws:* (1) the needs of the interstate and international system, (2) the relevant policies of the forum, (3) the basic policies underlying the particular field of law, and (4) the interests of certainty, predictability and uniformity.

■ Maksteel asserts, and we agree, that the most important function of the choice-of-law rules is to make the interstate and international systems work well. *See* Restatement (Second) *Conflict of Laws* § 6, comment d at 13. Maksteel's argument relating to the needs of the interstate and international system, however, mistakenly concerns only the original parties to the contract, Maksteel and Clifford. A critical aspect of this dispute that simply cannot be ignored is the fact that this dispute no longer involves only the original parties to the contract. There now exist other interests to be considered, those of the receiver and of Fleet, as well as other potential creditors of Clifford. This court cannot engage in an analysis without a fair consideration of all aspects of the dispute. As previously noted, this is not a simple contracts issue governed by general contract principles. Rather, the apparent intention of Maksteel to create a security interest in the steel until further payment brings this controversy into the realm of the law governing secured transactions.

Creditors or potential buyers of a Rhode Island corporation's assets rely upon the filing requirements established under the code for knowledge of the existence of a security interest or lien with respect to the assets of that corporation. As provided under the code provisions, such records are required to be filed in the state in which the goods are located.[4] Thus, in a situation wherein third parties such as Fleet and the receiver have relied on the provisions of such filing requirements, the needs of a uniform and consistent international system can only be served by application of the code. To conclude otherwise would leave third parties, whether from Rhode Island, a neighboring state, or Canada, without the ability to verify the existence or nonexistence of other interests in a corporation's assets. Such a result would only serve to destroy the "certainty, predictability and uniformity of result" so successfully created by the code with respect to secured transactions. Restatement (Second) *Conflict of Laws* § 6(f).

Moreover, in adopting the Uniform Commercial Code, Rhode Island adopted all the policies and principles behind it. Among these policies and principles is the desire "[t]o make uniform the law among the various jurisdictions." Section 6A–1–102(2)(c). To that end it is only appropriate to apply the code to the instant transaction as it is virtually the sole body of law in the United States governing secured transactions. *See* Restatement (Second) *Conflict of Laws* § 243 at 63 (1971). Hence we conclude that in the "interests of certainty, predictability and uniformity," the code, as adopted by Rhode Island, has the most appropriate relation to this transaction. Restatement (Second) *Conflict of Laws* § 6.

Upon correctly determining that the Rhode Island Uniform Commercial Code is controlling in regard to the rights of the parties to this dispute, the trial justice engaged in an analysis of the applicable sections of the code and concluded that Maksteel's security interest is unperfected and that any rights it may have as a reclaiming

4. *See* §§ 6A–9–103, 6A–9–302(1) and 6A–9–401.

seller are subordinate to the duly perfected security interest of Fleet and the lien-creditor status of the receiver.

Maksteel did not allege error either in its brief or in oral argument before us that the trial justice erroneously applied the applicable code sections to this dispute. Rather Maksteel argued only that the code should not have been applied to this dispute at the outset. It is well settled that any point of appeal that is neither briefed nor argued is deemed waived and that the "appellant must identify the issue he intends to raise, articulate his points of argument, and indicate authoritative sources upon which he relies." *The Walmac Co. v. Zurich Insurance Co.*, 114 R.I. 410, 417–18, 333 A.2d 686, 690–91 (1975); *see also Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648 (R.I. 1989). Accordingly the trial justice's conclusion that pursuant to the Rhode Island Uniform Commercial Code, Maksteel's interest is defeated by the interests of Fleet and the receiver will stand as it is inappropriate for us to review an issue not properly raised.

For the reasons stated, Maksteel's appeal is denied and dismissed and the order appealed from is affirmed.