[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court on Plaintiff Luanne Powers' (Plaintiff) motion for a new trial pursuant to Super. R. Civ. P. 59, to which the Defendant objects. On December 3, 2003, the jury returned a verdict in favor of the Defendant. Plaintiff contends that the judgment is against the law and the evidence and that the judgment fails to respond to the merits of the controversy. Defendant also moves to amend the judgment pursuant to Super. Ct. R. Civ. P. 59.
 FACTS AND TRAVEL
Joseph Coccia (Defendant) is the owner of property located at 341 Farmington Avenue in Cranston, Rhode Island Plaintiff leased an apartment from the Defendant at 341 Farmington Avenue from October 1, 1997 until July 2001. In June of 2000, Plaintiff notified Defendant that birds were nesting in the gutter near her bedroom window. Mr. Coccia visually inspected the area in and around the window of Plaintiff's bedroom. No action was taken at that time to remove the birds. Plaintiff did not complain about the problem again until June 2001 when bird mites appeared in her apartment. Plaintiff claims that the bird mites caused damage to her personal property and that she and her children suffered from medical illness as a result of the infestation.
Plaintiff initially instituted this action in District Court, but it was ultimately transferred to this Court by agreement of the parties as the claim for damages exceeded the exclusive jurisdictional limit of the District Court. Plaintiff's complaint alleged that the Defendant's negligent failure to maintain the premises resulted in the infestation of bird mites in Plaintiff's apartment. This matter went to trial before a jury on December 1, 2003. On December 3, 2003 the jury returned a verdict in favor of the Defendant, finding that he was not negligent in maintaining the premises.
Plaintiff timely filed the instant motion for a new trial, to which the Defendant objects. Plaintiff states as grounds for a new trial that (1) the judgment was against the law; (2) the judgment was against the evidence and the weight thereof; and (3) the judgment failed to respond to the merits of the controversy and failed to do substantial justice. Defendant moves to amend the judgment to include Plaintiff's minor children, James and Amanda Powers, as Plaintiffs in this action.
 STANDARD OF REVIEW
The motion for a new trial comes before this Court pursuant to Super. R. Civ. P. 59, which provides that:
 "[a] new trial may be granted to all or any of the parties and on all or part of the issues, (1) in an action in which there has been a trial by jury for error of law occurring at trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state."
The role of a trial justice when reviewing a motion for a new trial is well settled in this jurisdiction. The trial justice, sitting as an extra juror, must "independently weigh, evaluate and assess the credibility of the trial witnesses and evidence."Graff v. Motta, 748 A.2d 249, 255 (R.I. 2000) (quotingMorrocco v. Piccardi, 713 A.2d 250, 253 (R.I. 1998) (per curiam)). He or she may accept some or all of the evidence and reject testimony because it is impeached or contradicted by other positive testimony or by circumstantial evidence or because it is inherently improbable or at variance with undisputed physical facts or laws. Barbarto v. Epstein, 97 R.I. 191, 193,196 A.2d 836, 837 (1964).
The trial justice also may add to the evidence by drawing proper inferences. Id. at 193-94, 196 A.2d at 837. Upon determining that the evidence is evenly balanced or is such that reasonable minds, in considering the same evidence, could come to different conclusions, the trial justice must allow the verdict to stand, Graff, 748 A.2d at 255, even if the trial justice entertains some doubt as to its correctness. Marcotte v.Harrison, 443 A.2d 1225, 1232 (R.I. 1982). However, if after making an independent review of the evidence, the trial justice finds that the jury's verdict is against the fair preponderance of the evidence and fails to do substantial justice, the verdict must be set aside. Reccko v. Criss Cadillac Co., Inc.,610 A.2d 542, 545 (R.I. 1992) (citing Sarkisian v. New Paper, Inc.,512 A.2d 831, 835 (R.I. 1986)). Even though the trial justice "need not perform an exhaustive analysis of the evidence, he or she must refer with some specificity to the facts which prompted him or her to make the decision so that the reviewing court can determine whether error was committed." Reccko, 610 A.2d at 545 (citing Zarrella v. Robinson, 460 A.2d 415, 418 (R.I. 1983)).
ANALYSIS
Verdict Is Not Contrary to the Evidence
Plaintiff asserts that she had the burden of proving that the Defendant owed her a duty to keep the premises in a fit and habitable condition, that he breached that duty, and that she and her children suffered damages. Plaintiff contends that she "overwhelmingly" proved that Defendant breached his duty by presenting several witnesses who testified that Defendant was aware of the birds nesting in the gutter a year previous to the infestation. Plaintiff further argues that the verdict is against the weight of the evidence because the Defendant contradicted himself when he testified. Plaintiff maintains that on direct examination, Defendant testified that he recalled being shown where the birds were, but on cross examination, he testified that he did not recall being shown the defect.
Defendant claims that he never admitted to seeing a defect at any time with the house or on the roof, the gutter or eaves. Defendant testified that he spoke to the Plaintiff about the problems she was having with the birds near or around her window in June 2000 and that he visually inspected the area. Defendant contends that the complaint alleges negligence with respect to the birds nesting in the gutter in June 2000 and that there is no other allegation of negligence beyond that one specific instance. Defendant argues that there was no evidence presented that a defect actually existed at that time.
The Residential Landlord and Tenant Act provides that a landlord shall "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. . . ." G.L. 1956 § 34-18-22 (a)(2). A statutory violation, however, does not relieve the jury of its responsibility to find a breach of a duty of care, but rather serves as prima facie evidence of liability, unless rebutted by evidence in favor of the defendant. Errico v. LaMountain,713 A.2d 791, 794 (R.I. 1998). Thus, if the evidence demonstrates that the property was in an unreasonably dangerous condition and that the defendant knew or should have known about that condition, yet failed to take corrective action, then a jury is entitled to conclude that the defendant breached his or her duty of care. Id.
In the instant case, the evidence demonstrates that the Defendant knew that birds were nesting around Plaintiff's bedroom window in June 2000. Plaintiff did not present evidence, however, that an unreasonably dangerous condition existed at that time. Plaintiff never mentioned the birds again until June 2001 when the bird mites appeared, at which time the Defendant repaired the problem. Defendant testified that in June 2000 he was aware of the birds, but not that a defect existed that would cause the infestation. Plaintiff failed to demonstrate that an unreasonably dangerous condition existed in June of 2000 and that Defendant knew or should have known about this dangerous condition. In light of the evidence presented at trial, the jury could reasonably conclude that a dangerous condition did not exist in June 2000 and that Defendant was neither aware nor should he have been aware of a defect at that time. The verdict, therefore, was not against the weight of the evidence. Accordingly, Plaintiff's motion for a new trial must be denied for this reason.
Verdict Is Not against the Law
The Plaintiff argues that the jury's verdict is contrary to the law because the jury's question to the Court[1] suggests that they were confused by the law. The jury instructions were re-read to the jury and the Plaintiff contends that the jury misinterpreted the law on the issue of liability. Defendant maintains that the Plaintiff has no grounds to object on this point because Plaintiff's counsel never objected to the jury instructions when they were first read, nor did counsel object to the way the jury's question was answered.
Rule 51(b) of the Superior Court Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." Rule 51(b). "The rationale behind this rule is to allow the trial justice an opportunity to make any necessary corrections to his or her instructions before the jury begins its deliberations." DiFranco v. Klein, 657 A.2d 145, 147 (R.I. 1995). "Compliance with this rule is a `mandatory precondition' to preserving an objection to the jury instructions." Parrella v. Bowling, 796 A.2d 1091 (R.I. 2002) (quoting DiFranco, 657 A.2d at 147).
Plaintiff asserts that the jury may have been confused by the jury instructions, and therefore misinterpreted the law. Plaintiff, however, never objected to the jury instructions and raises the issue for the first time in this motion. Because Plaintiff did not offer a timely and meaningful objection to these instructions at trial, as required by Rule 51(b), it waived any right to object to these instructions in her motion for a new trial.
Assuming Plaintiff's objection had been timely, the jury instructions were still appropriate. The trial court's instruction must accurately state the law in Rhode Island that "a landowner has a duty to exercise reasonable care . . . and that duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." Tancrelle v. FriendlyIce Cream Corp., 756 A.2d 744, 752 (R.I. 2000). In the instant case, the jury was instructed that the Defendant owed a duty of care to the Plaintiff and, in determining whether Defendant breached that duty, the jury must find whether the condition of the eaves and gutter constituted an unreasonably dangerous condition and that the Defendant knew of the condition or upon a reasonable inspection should have known of the dangerous condition. Accordingly, the jury's verdict was not against the law as the Court properly instructed the jury on the applicable law.
No Error of Law to Require New Trial
Plaintiff finally argues that the Court committed an error of law by refusing to admit in evidence an affidavit of the Defendant. The affidavit contained statements made to the Defendant by representatives of Critter Control, Interstate Pest Control, and New England Pest Control and incorporated, by reference, documents submitted to the Defendant by the pest control companies. Plaintiff argues that the affidavit should have been admitted as an adoptive admission of a party-opponent under Rhode Island Rule of Evidence 801. Plaintiff further contends that the documents and statements of Critter Control, Interstate Pest Control, and New England Pest Control should have been admitted under Rule 801(d)(2)(D) as statements made by a party's agent or servant.
Defendant argues that the affidavit was rightfully excluded because the statements within the affidavit were hearsay. Defendant further argues that the statements were not adoptive admissions because neither an employment nor agency relationship was established.
Rhode Island Rule of Evidence 801(d)(2)(B) provides that a "statement of which the party has manifested his or her adoption or belief in its truth" is admissible as an admission of a party-opponent. Rule 801(d)(2)(B). "The burden of showing the manifestation is on the party offering the evidence." Pilgrim v.Trustees of Tufts College, 118 F.3d 864, 870 (1st Cir. 1997). "An adoptive admission has been described as conduct whereby a party, by words or conduct, signifies his or her acquiescence or approval of an out-of-court statement. This principle is sought to be employed frequently in instances in which there is a conversation with the defendant in which the defendant agrees with the remarks of the other party. However, it is suggested that the principle be utilized with some degree of caution." State v. Brennan, 527 A.2d 654, 655 n. 2 (R.I. 1987). The correct approach where documents are concerned is determining whether "the surrounding circumstances tie the possessor and the document together in some meaningful way." Pilgrim, 118 F.3d at 870 (citations omitted).
Plaintiff argues that by incorporating the documents of third parties into the affidavit, Defendant has adopted those statements as his own. Plaintiff, however, has not set forth any evidence establishing that Defendant manifested an intent to adopt those statements of others. Defendant asserts that the statements in the affidavit are not his statements, but rather statements made by the third parties to him. "The fact that the party declares that he or she has heard that another person has made a given statement is not alone sufficient to justify finding that the party has adopted the third person's statement. The circumstances surrounding the party's declaration must be examined to determine whether they indicated an approval of the statement." McCormick, Evidence § 261 at 164 (5th ed. 1999). Plaintiff has neither indicated any circumstances in which the Defendant approved of those statements nor has she established any circumstances to tie the Defendant and the documents together in some meaningful way. Accordingly, the affidavit does not qualify as an adoptive admission under Rule 801(d)(2)(B).
Plaintiff also argues that the affidavit should have been admitted as an admission made by the party's agent or servant. Rule 801(d)(2)(D) provides that "a statement by the party's agent or servant concerning a matter within the scope of the party's agency or employment, made during the existence of the relationship" may be admitted as an admission by a party-opponent. "[T]he three elements required to show the existence of an agency relationship include (1) a manifestation by the principal that the agent will act for him, (2) acceptance by the agent of the undertaking, and (3) an agreement between the parties that the principal will be in control of the undertaking." Lawrence v. Anheuser-Busch, Inc., 523 A.2d 864, 867 (R.I. 1987). Where the existence of a principal-agent relationship is at issue, extrajudicial statements and declarations of the purported agent are inadmissible to prove the agency under the hearsay rule. Walmac Co. v. Zurich Ins. Co.,114 R.I. 410, 416, 333 A.2d 686, 690 (1975). Further, "an agency cannot be established by acts of a professed agent unless the acts are of such a character and so continuous as to justify a reasonable inference that the principal had knowledge of them."Id.
In the instant case, Plaintiff failed to make a showing that an agency relationship existed among Defendant and Critter Control, Interstate Pest Control, and New England Pest Control. Plaintiff merely stated that those companies worked for Defendant and therefore, they were his agents and employees. Defendant argues that, at best, the pest control companies are independent contractors. An independent contractor relationship exists when one is retained to perform a task independent of and not subject to the control of the employer. 41 Am. Jur.2d IndependentContractors § 1 (1969). However, statements of a party's independent contractor do not come within Rule 801(d)(2)(D). 5Weinstein's Federal Evidence § 801.33[2][b] (2d ed. 2002). Plaintiff did not set forth any evidence establishing an agency relationship or that the statements made by the companies related to a matter within the scope of the agency or employment. Theonly evidence presented was the testimony of Defendant statingthat he had hired the companies to perform a job. The extent of the relationship was not ascertained, whether it was an agency relationship or as an independent contractor. Accordingly, an error of law was not made in refusing to admit the affidavit in evidence.
 MOTION TO AMEND JUDGMENT
Defendant moves this Court to amend the Civil Judgment on Verdict, entered on December 3, 2003, to reflect that the Plaintiffs include Plaintiff's minor children as well. Rule 59 provides for the amendment of judgments and such "motion[s] to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Rule 59(e). Defendant argues that the judgment should be altered to reflect Plaintiff's minor children, James Powers and Amanda Powers, as Plaintiffs because during trial, the Court permitted Plaintiff to amend the complaint to name her children as Plaintiffs. In light of Plaintiff's amendment to her complaint, Defendant's motion to amend judgment will be granted to reflect James and Amanda Powers as Plaintiffs in this action.
 CONCLUSION
After carefully reviewing all of the evidence of record, along with the arguments of counsel, this Court finds that in its rulings there are no errors of law warranting a new trial. Accordingly, Plaintiff's motion for a new trial is denied. Defendant's motion to amend the Civil Judgment on verdict is granted to reflect that judgment shall enter on behalf of the Defendant against the Plaintiff, Luanne Powers, both individually and as guardian and next friend of the minor Plaintiffs, James Powers and Amanda Powers. Counsel shall submit the proper judgment for entry.
[1] The jury asked the Court to "explain how awareness or unawareness affects liability."